```
Andrew G. Watters (#237990)
555 Twin Dolphin Dr., Ste. 300
Redwood City, CA 94065
andrew@andrewwatters.com
+1 (415) 261-8527


Attorney for Defendant
Simon Chan
```

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Simon Chan, Debtor | Case no. 18-40217CN7<br>A/P No. 18-04060 |
| MICHAEL SCOTT FRAZER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SIMON CHAN,<br><br>Defendant. | **DECLARATION OF ANDREW WATTERS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 4, 2019<br>Time: 10:00 a.m.<br>Place: Oakland, Room 215 |

**DECLARATION OF ANDREW WATTERS**

I, Andrew G. Watters, declare:

1. I am over the age of eighteen years and I have personal knowledge of the matters stated herein. If called as a witness, I would competently attest to same.

2. This declaration supports Defendant's motion for summary judgment in this matter.

3. In this declaration, I outline the discovery of certain forensic and documentary evidence in the state court document production. To summarize, the evidence is inconsistent with the Plaintiffs' trial court testimony and their version of events. The evidence shows unequivocally that the official, final PPM (version 1A-1) <u>did not</u> contain the disputed representations that were central to the state court trial, and this was the only PPM in place between December 20, 2005 and January 9, 2006. It also shows that as to $325,000 of the investment fund, the Plaintiffs who contributed those funds <u>cannot</u> have relied on the versions of the PPM they claimed at trial they relied on (version 1A-2 and version 2A-2), <u>because those PPM's did not yet exist</u>. Analysis of EML files and metadata reveals that Version 1A-2 was created on January 9, 2006, <u>after</u> half of the investment funds ($325,000) were contributed. Version 2A-2 was created on April 12, 2006, <u>well after</u> most of the investments in this action were completed. I discuss these issues in detail in this declaration.

4. David Tarnowski was the self-described "wordsmith" who wrote the PPM. R.T. 26:15-22 (<u>Exhibit A</u> — trial transcript excerpts). Plaintiffs have no evidence that Defendant contributed any portion of the PPM other than his Chinese real

estate experience.  R.T. 374:14-20 (Exhibit A).   Mr. Tarnowski's document production included a number of EML files that are relevant to this action.  As the Court may be aware, EML files (.eml) are saved digital copies of email messages that a person can download from his email program or provider.  As opposed to printouts or PDF's that are commonly produced in document production, EML files preserve metadata and provide an accurate record of a particular email as it was sent, including email headers, blind carbon copy (BCC) fields, and source data.  Here, Mr. Tarnowski downloaded the messages from Yahoo in 2015 before producing them some time in 2016.  The messages consist of at least 20,000 files, which we have carefully reviewed in an effort to determine what actually happened with the different versions of the PPM and what the sequence of events was here.  Here is what a portion of the file collection looks like on my desktop:

5. The above folder shows the EML and .meta files sorted by date of email transmission. Here, I have focused on all of the emails sent and received by Mr. Tarnowski on December 20, 2005 (the date version 1A-1 of the PPM was distributed). The subject line of each email appears in the file names after a unique sequential identifier representing the IMAP identification number of each message (IMAP is an email server protocol).

6. The files are digital copies that Mr. Tarnowski produced, and Plaintiffs are free to examine them and compare their versions with my copies. I should note that my client merely provided file names of files that he found relevant, and I looked those files up within my own copy of the document production; my client did not send me copies of the EML files. My copy of the document production came from prior counsel for Defendant, rather than from Defendant, in early 2017 long before the PPM versioning issue even arose. In addition, the file properties of the EML files show that they have not been modified, in transit or otherwise.

7. I provide as <u>Exhibit B</u> to this declaration several PDF printouts of the raw EML files that my client and I have analyzed. The original EML files are also available and can be opened in Outlook or any email program, or even read with a text editor if desired. As the Court will see, the email messages in question make three things very clear: (1) the final, official PPM of December 20, 2005 (1A-1) did not have the disputed representations in it, (2) the first PPM with the disputed representations in it (1A-2) was not created until January 9, 2006, <u>after</u> half of the money had already been invested, and (3)

the second half of the money was invested following receipt of a revised PPM (1A-2, 1A-4, and/or 2A-2) that was provided to some of the Plaintiffs by Mr. Tarnowski, and that was not approved or authorized (or ratified) by Mr. Mugg or Mr. Chan.  According to Mr. Tarnowski's emails and his trial testimony, Mr. Tarnowski was partners with some of the Plaintiffs in an unrelated business venture dealing with some sort of guitar amplifier-related hardware.  It is these Plaintiffs to whom Mr. Tarnowski directed version 1A-2 of the PPM, according to his emails.  Version 2A-2, created April 12, 2006, is found in Mr. Tarnowski's document production rather than Plaintiffs' document productions, yet it was the version most of the Plaintiffs claimed at trial to have relied on when investing their money months earlier.  As proof of the 1A-1 distribution and timeline, I provide the following series of screenshots with my comments:

The first screenshot shows the message where my client provides his changes to the draft PPM to the other participants:

