1 under "other assets," right?
2     A.   Correct.
3     Q.   And this is in the amount of the promissory
4 note, right?
5     A.   Correct.  Yes, sir, that's true.
6     Q.   Do you know why the Adept note was made?
7     A.   No, I do not.
8     Q.   Have you ever tried collecting on the Adept
9 note?
10    A.   No.
11    Q.   Has anything prevented you from filing a
12 lawsuit to collect on the Adept note?
13    A.   No.
14    Q.   You are a member of Dragonwood, LLC, correct?
15    A.   Yes, sir.
16    Q.   Did you ever sign the operating agreement?
17    A.   Yes, sir.
18    Q.   In other words, you agreed to be bound by the
19 operating agreement of Dragonwood, LLC?
20    A.   Correct.
21    Q.   Were you part of the new management team
22 elected in 2012 for Dragonwood?
23         MR. WALSH:  Objection.  Assumes facts not in
24 evidence.
25         MR. WATTERS:  There's been some testimony about
26 the minutes, Your Honor.
27         THE COURT:  That's why he's asking it,
28 probably, to see whether or not it will get into

REPORTER CERTIFICATE

        I hereby certify that the proceedings were taken at the time and place herein named; that the transcript is a true record of the proceedings as reported to the best of my ability by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed under my direction into typewriting by computer.

        I further certify that I am not interested in the outcome of said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

        IN WITNESS WHEREOF, I have hereunto set my hand this _____ day of _____, 2017.

_____
APRIL DAWN HEVEROH
CSR NO. 8759

```
 1                SUPERIOR COURT OF CALIFORNIA
 2                   COUNTY OF CONTRA COSTA
 3                    UNLIMITED JURISDICTION
 4
 5   MICHAEL SCOTT FRAZER, et al.,    )
                                      )
 6                  Plaintiffs,       ) No.CIVMSC14-00633
     vs.                              )
 7                                    ) Volume III
     SIMON CHAN, et al.,              ) Pages 286-395
 8                                    )
                                      )
 9                  Defendants.       )
     _____)
10                                    )
     AND RELATED CROSS-COMPLAINT.     )
11   _____)
12
13
14
15          Wednesday, July 19, 2017 at 10:14 a.m.
16
17
18
19       The above-entitled matter came on regularly
20       for hearing at the date and time above set
21       forth before the Hon. STEVEN K. AUSTIN, Judge
22       of the Superior Court.
23
24
25
26
27       Reported by:  April Dawn Heveroh, CSR No. 8759
28
```

```
 1                    INDEX OF EXAMINATION
 2   FOR THE PLAINTIFF                                         PAGE
 3   WITNESS:   MICHAEL SCOTT FRAZER
 4   Cross-Examination by Mr. Watters (Continued)              291
 5   Cross-Examination by Mr. Killian                          299
 6   Redirect Examination by Mr. Walsh                         302
 7   Examination by The Court                                  305
 8
 9   WITNESS:   MICHELLE FANTO-CHAN
10   Direct Examination by Mr. Walsh                           312
11   Cross-Examination by Mr. Watters                          326
12   Redirect Examination by Mr. Walsh                         345
13   Recross Examination by Mr. Watters                        347
14   Cross-Examination by Mr. Saffouri                         348
15   Examination by The Court                                  350
16
17   WITNESS:   THOMAS J. VELKEN
18   Direct Examination by Mr. Walsh                           354
19   Cross-Examination by Mr. Watters                          367
20   Cross-Examination by Mr. Saffouri                         379
21   Examination by The Court                                  382
22
23   WITNESS:   JULIE LAM
24   Direct Examination by Mr. Walsh                           385
25
26                          ---oOo---
27
28
```

INDEX OF EXHIBITS

Joint Exhibit 94 was admitted into evidence......... 295
Joint Exhibit 94 was admitted into evidence......... 299
Joint Exhibit 95 was marked for identification...... 337
Joint Exhibit 95 was admitted into evidence......... 338
Joint Exhibit 96 was marked for identification...... 345
Joint Exhibit 96 was admitted into evidence......... 352

---oOo---

```
 1                    A P P E A R A N C E S
 2    FOR THE PLAINTIFFS:
 3        WALSH LAW FIRM
 4        BY: JAMES R. WALSH, Attorney at Law
 5        1990 N. California Boulevard, 8th Floor
 6        Walnut Creek, CA  94596
 7        T: 925-284-7400
 8        F: 866-406-8863
 9
10    FOR CROSS-DEFENDANTS, JULIE LAM, JEFF CHANG, AND TOM
      VELKEN:
11
12        RAMSEY LAW GROUP
13        BY: HUSSEIN SAFFOURI, Attorney at Law
14        3736 Mt. Diablo Boulevard, Suite 300
15        Lafayette, CA  94549
16        T: 925-284-2800
17
18    FOR DEFENDANT, SIMON CHAN:
19        BY: ANDREW G. WATTERS, Attorney at Law
20        555 Twin Dolphin Drive, Suite 300
21        Redwood City, CA  94065
22        T: 415-261-8527FOR THE DEFENDANT:
23
24    FOR DEFENDANTS, PHAN TRAN AND PEARL TRAN:
25        BY: CLINTON KILLIAN, Attorney at Law
26        1814 Franklin Street, Suite 600
27        Oakland, CA  94612
28        T: 510-500-5775
```

```
 1                    A P P E A R A N C E S
 2                         (Continued)
 3
 4    FOR DEFENDANT, DAVID TARNOWSKI:
 5         BY: DAMIAN RICKERT, Attorney at Law
 6         109 Jackson Street, Suite 230
 7         Hayward, CA   94544
 8         T: 510-886-9414
 9
10                          ---oOo---
```

```
 1   CASE NUMBER:              CIVMSC14-00633
 2   CASE NAME:                FRAZER vs. CHAN, et al.
 3   MARTINEZ, CALIFORNIA      WEDNESDAY, JULY 19, 2017
 4   DEPARTMENT 33             HON. STEVEN K. AUSTIN
 5   REPORTER:                 APRIL D. HEVEROH, CSR #8759
 6   TIME:                     10:14 A.M.
 7                          ---oOo---
 8
 9              P R O C E E D I N G S
10         THE COURT:  All right.  Let's go ahead.  Who
11   have we got?
12         MR. WALSH:  Mr. Frazer is back on
13   cross-examination.
14         THE COURT:  Okay, Mr. Frazer.  Come on up.
15         MR. WALSH:  Your Honor, the record should just
16   reflect that Mr. Chang has moved to the jury box to
17   assist his hearing of the witnesses with the permission
18   of the Court.
19         THE COURT:  Great.
20         MR. WALSH:  Your Honor, we have the stipulation
21   of facts that all parties have signed, and which I will
22   submit to the clerk at this time.
23         THE COURT:  Okay.  Go ahead.
24         MR. WATTERS:  Yes, Your Honor.
25              RESUMED CROSS-EXAMINATION
26   BY MR. WATTERS:
27         Q.   Mr. Frazer, when we left off yesterday, we were
28   talking about the note between Adept and Dragonwood.  Do
```

| | |
|---|---|
| 1 | MR. SAFFOURI: No, Your Honor. |
| 2 | THE COURT: Okay. I have a couple. |

EXAMINATION

BY THE COURT:

Q. So I want you to look at Exhibit 2. That's the first amended limited liability company operating agreement. Did you get a copy of that when you signed on to this investment?

A. Yes, sir.

Q. All right. So if you go to page 9. And 2.7.

A. Yes, sir.

Q. It says that, "No member shall have the right to withdraw all or any part of the capital contribution." So I took that to mean that under the agreement, you're not able to withdraw your funds, like there's been a lot of testimony about, "Sell, we want our money out," but under the agreement it doesn't seem like it allows you to do that.

A. My understanding was that you couldn't -- you don't have that right to withdraw. In other words, if there was -- you couldn't demand your money and they would just give you your money back.

Q. Yeah.

A. That if they sold, then you would get your money back as per the agreement, but you couldn't change your mind and say, "No, I want my money back." In other words, it was only after the property had been sold that that could happen.

Q.   It looks like through the operating agreement
the decision on whether to sell it or not is left with
the management, you don't have that decision.
         A.   That's correct.
         Q.   So as long as they decide not to sell it, you
don't get your capital back?
         A.   Correct.
         Q.   And are you saying that that's a breach of the
agreement in some way?
             MR. WALSH:  Objection.  A little vague, Your
Honor.
             THE COURT:  Well, I'm just trying to
understand, since it says -- the agreement says he
doesn't get his capital back, and then the next page has
what happens when you transfer and they have a right of
first refusal and there's a lot of those things in here,
and nobody has talked about any of this, and maybe it's
going to be coming up later in the trial, but I'm -- I'm
maybe looking ahead a little bit, or maybe not.  I don't
know.  But I had some questions about how those apply
and whether anybody actually has looked at those things.
             MR. WALSH:  Well, the question I think you were
trying to pose was even though you didn't have a right,
you could still express a view and ask them to sell it,
and that's what they did.  And they agreed to sell it.
BY THE COURT:
         Q.   But is there anything in the agreement that
requires that they sell if you demand that they sell?

That you know of? I've looked through this thing and I haven't found it.

A. No. You're correct, sir. The decision whether to sell or not would be up to the managers of Adept. In this case, Simon and Gary. We had the right to request it, but we did not have the right to demand that they sell.

Q. On page 10 there's a number of different procedures for transfer of interest. Did you or anyone else, to your knowledge, any of the other investors, ever explore any of those mechanisms for getting your money out?

A. Right. I don't know about anybody else, but there was nobody I knew that I would want to put into this investment. So -- but we did have that -- my understanding is we had the right if Mr. Mugg and Mr. Chan agreed to it. But that was all. There was also the series B, which was going to be done, which would basically be buying out our units, which was, I believe, started but never finished.

Q. Yeah. This -- these provisions look like you could transfer your interest but in order to do that, you first had to give a first option to Dragonwood, I guess it would be the managers there, to purchase.

A. Right.

Q. And then to other investors or members before you could transfer it to some third party. But you never explored any of that because you wouldn't want to

```
 1  bring anybody into this investment?
 2      A.   Yes, sir.
 3      Q.   Other than those two ways of getting out of the
 4  investment, one would be the managers decided to sell
 5  the properties or you -- someone -- a member exploring
 6  the transfer of their interest under article 3, do you
 7  know of any other way to require -- or to get your cash
 8  out of this investment under the operating agreements?
 9      A.   Right.  I mean, it was -- no.  I mean, we tried
10  to exert as much pressure as we could, including the
11  demand letter, basically saying, "You guys promised
12  that -- you know, in the memorandum this was to quickly
13  build, rent and sell in 2008.  It wasn't happening, so
14  we tried to exert what little pressure we could.
15           THE COURT:  Okay.  Thanks.
16           MR. KILLIAN:  Your Honor, if you look on page
17  24 of the operating agreement, it states that an
18  affirmative vote of the majority of the members can
19  dissolve the LLC and liquidate its assets and distribute
20  the assets.
21           THE COURT:  Oh, did that happen?  At some point
22  did all the members get together and vote to dissolve
23  the LLC?
24           THE WITNESS:  No, sir.
25           THE COURT:  Let me take a look at that.  On
26  page 24?
27           MR. KILLIAN:  Yes, Your Honor.
28           THE COURT:  You need the written consent of a
```

```
 1  manager and the affirmative vote or consent of the
 2  majority of the -- I guess that's the members of the
 3  series?
 4          Oh, and B is another interesting one.  It says,
 5  "With respect to the series of withdrawal, removal,
 6  dissolution or bankruptcy of the manager," and here the
 7  managers for your series were Mr. Chan and Mr. Mugg,
 8  right?
 9          THE WITNESS:  Correct.
10          MR. KILLIAN:  That's correct.
11          THE COURT:  And Mr. Chan says he removed
12  himself some time ago and Mr. Mugg has passed.  So has
13  anyone ever explored that mechanism for dissolving the
14  corporation on page 24, subsection 10.1-B?
15          MR. WALSH:  Not that I'm aware of.
16          MR. KILLIAN:  Actually, Your Honor, the -- both
17  the corporation and the LLC were voluntarily dissolved
18  at the time of -- after Mr. Mugg's death.
19          MR. WATTERS:  I think we may need to brief that
20  issue, Your Honor.  I'm not sure I agree with that.
21          MR. KILLIAN:  Well, the Secretary of State, you
22  can look on the website and see that one is suspended
23  and the other one was dissolved.  I don't remember which
24  one was which, but this issue was addressed, I believe,
25  in the probate of Mr. Mugg's estate.
26          THE COURT:  The dissolution of the LLC?
27          MR. KILLIAN:  I believe so, Your Honor.
28          THE COURT:  And has there ever been a
```

```
 1  dissolution of the LLC?
 2          MR. KILLIAN:  There's no -- the -- none of
 3  these LLCs and corporation entities that we have talked
 4  about were listed in the probate inventory and appraisal
 5  because according to the probate attorney, they no
 6  longer existed.  And so they weren't listed, nor were
 7  they part of his probate estate.
 8          THE COURT:  That's unusual because they still
 9  have an asset which is -- even though it's in Mr. Chan's
10  name, it's the properties in China.
11          MR. WATTERS:  Also, Your Honor, I'd like to
12  represent I'm on the Secretary of State web page and the
13  Adept Properties, LLC shows as active.
14          MR. KILLIAN:  The Adept Property Management is
15  active, which is a totally separate entity, and which
16  was sold by the estate to the other member who was not a
17  party or had anything to do with any people.  Adept
18  Property Management was a company that Gary Mugg set up
19  to manage apartment buildings in the Bay Area, and he
20  had two different members with him and at the time of
21  his death, one of the members bought the estate's
22  interest, and that is owned fully by someone else who's
23  unrelated to all of this litigation.
24          THE COURT:  There isn't any cause of action in
25  the amended complaint to dissolve the corporation and
26  distribute the assets under the terms of the agreement?
27          MR. WATTERS:  There is no cause of action for
28  that, Your Honor, although Adept Properties, LLC is
```

```
 1  named as a defendant and they defaulted.
 2          MR. KILLIAN:  It's a default of a suspended
 3  corporation that couldn't appear, anyway.
 4          MR. WATTERS:  Well, actually, I have to correct
 5  that.  I'm on the Secretary of State web page.  Adept
 6  Properties, LLC is active as of today.
 7          THE COURT:  It just seems that that might be
 8  one mechanism for getting the properties sold and
 9  getting everything done if you just follow the
10  provisions of the agreement.  So just a suggestion.  All
11  right.  Anything --
12          MR. WALSH:  No.
13          MR. WATTERS:  Nothing further, Your Honor.
14          THE COURT:  Anything further from anybody?
15  Okay.  Thanks.
16          THE WITNESS:  Do I return this?
17          MR. WALSH:  No.
18          Oh, yes, yes.  We need that back.
19          THE COURT:  Those are marked exhibits, though?
20          MR. WATTERS:  Yes.  The signature page is
21  marked.  The second amended complaint is just a courtesy
22  copy.
23          MR. WALSH:  Your Honor, Plaintiffs now call
24  Plaintiff Michelle Chan.
25          THE COURT:  Okay.  Come on up.
26          THE CLERK:  You do solemnly swear the testimony
27  you are about to give in the matter now pending before
28  the Court will be the truth, the whole truth, and
```