1  That you know of?  I've looked through this thing and I
2  haven't found it.
3      A.  No.  You're correct, sir.  The decision whether
4  to sell or not would be up to the managers of Adept.  In
5  this case, Simon and Gary.  We had the right to request
6  it, but we did not have the right to demand that they
7  sell.
8      Q.  On page 10 there's a number of different
9  procedures for transfer of interest.  Did you or anyone
10 else, to your knowledge, any of the other investors,
11 ever explore any of those mechanisms for getting your
12 money out?
13     A.  Right.  I don't know about anybody else, but
14 there was nobody I knew that I would want to put into
15 this investment.  So -- but we did have that -- my
16 understanding is we had the right if Mr. Mugg and
17 Mr. Chan agreed to it.  But that was all.  There was
18 also the series B, which was going to be done, which
19 would basically be buying out our units, which was, I
20 believe, started but never finished.
21     Q.  Yeah.  This -- these provisions look like you
22 could transfer your interest but in order to do that,
23 you first had to give a first option to Dragonwood, I
24 guess it would be the managers there, to purchase.
25     A.  Right.
26     Q.  And then to other investors or members before
27 you could transfer it to some third party.  But you
28 never explored any of that because you wouldn't want to

bring anybody into this investment?

A. Yes, sir.

Q. Other than those two ways of getting out of the investment, one would be the managers decided to sell the properties or you -- someone -- a member exploring the transfer of their interest under article 3, do you know of any other way to require -- or to get your cash out of this investment under the operating agreements?

A. Right. I mean, it was -- no. I mean, we tried to exert as much pressure as we could, including the demand letter, basically saying, "You guys promised that -- you know, in the memorandum this was to quickly build, rent and sell in 2008. It wasn't happening, so we tried to exert what little pressure we could.

THE COURT: Okay. Thanks.

MR. KILLIAN: Your Honor, if you look on page 24 of the operating agreement, it states that an affirmative vote of the majority of the members can dissolve the LLC and liquidate its assets and distribute the assets.

THE COURT: Oh, did that happen? At some point did all the members get together and vote to dissolve the LLC?

THE WITNESS: No, sir.

THE COURT: Let me take a look at that. On page 24?

MR. KILLIAN: Yes, Your Honor.

THE COURT: You need the written consent of a

```
 1   manager and the affirmative vote or consent of the
 2   majority of the -- I guess that's the members of the
 3   series?
 4            Oh, and B is another interesting one.  It says,
 5   "With respect to the series of withdrawal, removal,
 6   dissolution or bankruptcy of the manager," and here the
 7   managers for your series were Mr. Chan and Mr. Mugg,
 8   right?
 9            THE WITNESS:  Correct.
10            MR. KILLIAN:  That's correct.
11            THE COURT:  And Mr. Chan says he removed
12   himself some time ago and Mr. Mugg has passed.  So has
13   anyone ever explored that mechanism for dissolving the
14   corporation on page 24, subsection 10.1-B?
15            MR. WALSH:  Not that I'm aware of.
16            MR. KILLIAN:  Actually, Your Honor, the -- both
17   the corporation and the LLC were voluntarily dissolved
18   at the time of -- after Mr. Mugg's death.
19            MR. WATTERS:  I think we may need to brief that
20   issue, Your Honor.  I'm not sure I agree with that.
21            MR. KILLIAN:  Well, the Secretary of State, you
22   can look on the website and see that one is suspended
23   and the other one was dissolved.  I don't remember which
24   one was which, but this issue was addressed, I believe,
25   in the probate of Mr. Mugg's estate.
26            THE COURT:  The dissolution of the LLC?
27            MR. KILLIAN:  I believe so, Your Honor.
28            THE COURT:  And has there ever been a
```

1  dissolution of the LLC?

2       MR. KILLIAN:  There's no -- the -- none of
3  these LLCs and corporation entities that we have talked
4  about were listed in the probate inventory and appraisal
5  because according to the probate attorney, they no
6  longer existed.  And so they weren't listed, nor were
7  they part of his probate estate.

8       THE COURT:  That's unusual because they still
9  have an asset which is -- even though it's in Mr. Chan's
10 name, it's the properties in China.

11      MR. WATTERS:  Also, Your Honor, I'd like to
12 represent I'm on the Secretary of State web page and the
13 Adept Properties, LLC shows as active.

14      MR. KILLIAN:  The Adept Property Management is
15 active, which is a totally separate entity, and which
16 was sold by the estate to the other member who was not a
17 party or had anything to do with any people.  Adept
18 Property Management was a company that Gary Mugg set up
19 to manage apartment buildings in the Bay Area, and he
20 had two different members with him and at the time of
21 his death, one of the members bought the estate's
22 interest, and that is owned fully by someone else who's
23 unrelated to all of this litigation.

24      THE COURT:  There isn't any cause of action in
25 the amended complaint to dissolve the corporation and
26 distribute the assets under the terms of the agreement?

27      MR. WATTERS:  There is no cause of action for
28 that, Your Honor, although Adept Properties, LLC is

```
 1  named as a defendant and they defaulted.
 2          MR. KILLIAN:  It's a default of a suspended
 3  corporation that couldn't appear, anyway.
 4          MR. WATTERS:  Well, actually, I have to correct
 5  that.  I'm on the Secretary of State web page.  Adept
 6  Properties, LLC is active as of today.
 7          THE COURT:  It just seems that that might be
 8  one mechanism for getting the properties sold and
 9  getting everything done if you just follow the
10  provisions of the agreement.  So just a suggestion.  All
11  right.  Anything --
12          MR. WALSH:  No.
13          MR. WATTERS:  Nothing further, Your Honor.
14          THE COURT:  Anything further from anybody?
15  Okay.  Thanks.
16          THE WITNESS:  Do I return this?
17          MR. WALSH:  No.
18          Oh, yes, yes.  We need that back.
19          THE COURT:  Those are marked exhibits, though?
20          MR. WATTERS:  Yes.  The signature page is
21  marked.  The second amended complaint is just a courtesy
22  copy.
23          MR. WALSH:  Your Honor, Plaintiffs now call
24  Plaintiff Michelle Chan.
25          THE COURT:  Okay.  Come on up.
26          THE CLERK:  You do solemnly swear the testimony
27  you are about to give in the matter now pending before
28  the Court will be the truth, the whole truth, and
```