```
 1  your own legal or financial advice before investing,
 2  correct?
 3       A.   Correct.
 4       Q.   You understood that you had the opportunity to
 5  ask Mr. Mugg or the other principals any questions you
 6  wanted before investing, correct?
 7       A.   Correct.
 8       Q.   An explanation of each risk factor appears on
 9  page 21 to 22, correct?  21 to 23; is that right?
10       A.   That's correct.
11       Q.   You understood that the properties might not be
12  able to be rented or resold, correct?
13       A.   Correct.
14       Q.   You understood that the company might not be
15  able to find tenants or buyers for the properties,
16  correct?
17       A.   Correct.
18       Q.   You must have understood, then, that the
19  company might be stuck with the properties indefinitely.
20  Is that fair?
21       A.   That's fair.
22       Q.   You understood that there were forward-looking
23  statements in the PPM, correct?
24       A.   Yes.
25       Q.   You understood that Chinese law might be
26  materially different from U.S. law in connection with
27  the acquisition and holding of the property, correct?
28       A.   Correct.
```

MR. WATTERS:  But I would prefer to make a
stipulation that the plaintiffs are all in the same
position with respect to the issues I've raised with
Exhibit A.  That way we don't have to go through the
testimony with each plaintiff.
              MR. WALSH:  I believe that to be correct with
respect to all plaintiffs except, perhaps, Julie Lam.
              MR. WATTERS:  So all plaintiffs except Julie
Lam, Your Honor?
              THE COURT:  That's fine.  Yeah.  They all had
the same version hooked on to their amended complaint.
              MR. WATTERS:  Well, the issue is -- what we're
going to argue about is whether the -- whether that's
accurate or not, but the issue I'm -- the stipulation
I'm trying to make is that the issues I've raised with
respect to the version of the PPM attached to the second
amended complaint are the same for each plaintiff except
for Julie Lam.  Otherwise, I have to go through the
questions with each plaintiff.
              MR. WALSH:  If the question is:  Did each
plaintiff read all of the risk factors and understand
them, the answer is yes.
              THE COURT:  No, that's not what he's saying.
              MR. WALSH:  I don't know what he's saying.
              THE COURT:  Your predecessor hooked a wrong
version --
              MR. WALSH:  Yes.
              THE COURT:  -- in your opinion, of the PPO on

```
 1  the back of the amended complaint, the one that doesn't
 2  have the problems that you're complaining about now.
 3          MR. WALSH:  Yes.
 4          THE COURT:  That's never been changed.
 5          MR. WALSH:  No.
 6          THE COURT:  And so justifiably, he's pointing
 7  that out with each one of the plaintiffs, and it takes
 8  some time to do.  If we could just have a stipulation
 9  that they all have that hooked on to the back, then he
10  could argue it all --
11          MR. WALSH:  They all had that -- they all had
12  that hooked on to the back of the second amended
13  complaint?
14          THE COURT:  Yeah.
15          MR. WATTERS:  Fine.
16          MR. WALSH:  That's fine.
17          THE COURT:  Is that okay?
18          MR. WATTERS:  That's fine.  That's sufficient.
19          THE COURT:  Thanks.
20          MR. WALSH:  Likewise, we would offer that the
21  stipulation that they all read the risk factors set
22  forth in the PPM in Exhibits 3 and 58 and accepted them.
23          THE COURT:  I'd go for that one, too.
24          MR. WATTERS:  Yes, Your Honor.
25          THE COURT:  Great.  That's so stipulated.
26          MR. WATTERS:  I'd like to have marked as
27  Exhibit 95 a consent form which I represent has been
28  produced in discovery as the estate of Gary Mugg, 233.
```

1   A.   Okay.
2   Q.   You had never met Mr. Chan at the time of your
3  investment, correct?
4   A.   Correct.
5   Q.   You had never spoken with Mr. Chan at the time
6  of your investment, correct?
7   A.   Correct.
8   Q.   So apart from the PPM, to the extent Mr. Chan
9  may be responsible for any of its contents, were there
10 any representations made to you by Mr. Chan prior to
11 your investment?
12  A.   No.
13  Q.   Apart from the PPM that we have discussed and
14 that your attorney discussed with you, do you have any
15 other evidence that my client defrauded you before you
16 made your investment?
17  A.   Not before.
18  Q.   Were you provided the legal opinion on Chinese
19 law along with a version of the PPM at some point?
20  A.   Yes.
21  Q.   Did you read the legal opinion?
22  A.   I did.
23  Q.   You were saying in this action that Mr. Chan
24 was a trustee to you; is that correct?
25  A.   Correct.
26  Q.   Do you have any evidence that there was ever a
27 signed trust agreement between you and Mr. Chan?
28  A.   No.

1    MR. WATTERS:  I can just follow up on his
2  questions, Your Honor.  That's fine.
3           THE COURT:  Okay.  You were done, right?
4           MR. WATTERS:  Yeah.
5           THE COURT:  Okay.  Come on up.
6           All right.  Go ahead.
7                    REDIRECT EXAMINATION
8  BY MR. WALSH:
9       Q.   Mrs. Chan, I'm going --
10          MR. WALSH:  I think I better mark this as 94.
11          THE CLERK:  That would be 96.
12          MR. WALSH:  Better mark it as something.
13          THE CLERK:  That would be 96.
14          MR. WALSH:  May I approach the witness?
15          THE COURT:  Yes.
16 BY MR. WALSH:
17      Q.   Mrs. Chan, over the lunch break, did you go and
18 retrieve your PPM?
19      A.   I did.
20      Q.   And is that marked as Exhibit 96?
21      A.   It is.
22      Q.   What is the date of that PPM?
23      A.   January 9th, 2006.
24      Q.   And if you open it up, what is the version?
25      A.   1A-4.
26      Q.   Okay.  Now, we've been talking about Exhibit 58
27 and Exhibit 3, and I'd like to direct your attention to
28 pages 6 and 7 of your PPM.  And does that contain the